UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY LEMLE,

                Plaintiff,                CIVIL ACTION NO. 11-10295

          v.                  DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

    ***A.    Proceedings in this Court***

    On January 24, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's partially unfavorable decision disallowing benefits after February 1, 2006 (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's final decision (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 18, 23). Plaintiff also filed a response to Defendant's motion for summary judgment (Dkt. No. 24).

    ***B.    Administrative Proceedings***

    Plaintiff filed the instant claims on March 21, 2005, alleging that she became unable to work on October 15, 2002 (Tr. 24). The claim was initially disapproved by the Commissioner on May 23, 2005 (Tr. 24). Plaintiff requested a hearing and on June 11, 2007, Plaintiff appeared with a non-attorney representative before Administrative Law Judge (ALJ) Edward D. Steinman,

who considered the case *de novo*.  In a partially favorable decision dated January 25, 2008, the

ALJ found that Plaintiff was disabled between October 16, 2002 and January 31, 2006, but that

Plaintiff's medical condition improved such that she was not disabled after February 1, 2006 (Tr.

19-34).  Plaintiff requested a review of this decision on March 24, 2008 (Tr. 17).  The ALJ's

decision became the final decision of the Commissioner on December 22, 2010, when, after the

review of additional exhibits[1] (AC-1, Tr. 1028-1029), the Appeals Council denied Plaintiff's

request for further review (Tr. 3-4).

In light of the entire record in this case, this Magistrate Judge finds that substantial

evidence supports the Commissioner's determination that Plaintiff was not disabled after

February 1, 2006.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary

judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the

findings and conclusions of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 51 years old on her alleged disability onset date (Tr. 29).  She has past

relevant work as an intake supervisor (Tr. 29).  The ALJ applied the five-step disability analysis

to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful

activity since October 15, 2002, Plaintiff's alleged disability onset date (Tr. 27).  At step two, the

ALJ found that Plaintiff had the following "severe" impairments: cardiac impairment.  *Id*.  At

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 28).

Between steps three and four, the ALJ found that – beginning on February 1, 2006 – Plaintiff had the Residual Functional Capacity (RFC) to perform "light work with occasional postural limitations in climbing, bending, stooping, kneeling, crouching and crawling" (Tr. 31). At step four, the ALJ denied Plaintiff benefits, because the ALJ found that – beginning on February 1, 2006 – Plaintiff could perform her "past relevant work as an intake supervisor as it is generally performed in the national economy...." (Tr. 34).

### B.    *Administrative Record*

#### 1.    **Medical Evidence**

This issue on appeal in this case is limited to whether Plaintiff continued to be disabled after February 1, 2006.  Accordingly, this Report and Recommendation will only summarize the medical evidence immediately preceding, and after, February 1, 2006.  Furthermore, Plaintiff's arguments on appeal focus on the ALJ's decision to discount the opinions of three of Plaintiff's treating physicians – Drs. Baker, Fann & Gottschalk.  Thus, the Report and Recommendation will focus on the opinions and records of these physicians.

In December 2006, Dr. Robert Baker hand-wrote a "to whom it may concern" note, which stated that Plaintiff "has Class III heart failure.  Beyond that I am not a physical medicine & rehabilitation physician & cannot evaluate her for this.  There are many physicians in town that can do this" (Tr. 911).  Attached to this hand-written note is an "American Heart Association Functional Capacity" report filled out by Dr. Baker, which states that a patient with Class III heart failure has "marked limitation of physical activity.  They are comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain.  Walking more than one

block, climbing one flight of stairs or the usual activities of daily living do produce symptoms"
(Tr. 912). Dr. Baker ordered an echocardiogram to determine Plaintiff's LV (ejection fraction)
function (Tr. 922). Dr. Baker's notes indicate that Plaintiff saw him because she wished to stop
taking Coumadin (an anti-clotting medication, or blood thinner). Dr. Baker warned Plaintiff
about the risks of stopping Coumadin – and specifically advised Plaintiff that she "should likely
be on" Coumadin (Tr. 922). However, Plaintiff apparently decided to stop taking that medication
(Tr. 922). Dr. Baker's records do not explain why Plaintiff wanted to stop taking Coumadin.

On February 1, 2007, Dr. Baker saw Plaintiff for a follow-up appointment (Tr. 929-931).
At this appointment, Dr. Baker noted that Plaintiff had a "normal ejection fraction" and that she
was not being complaint with her prescription medication (Tr. 930A). In particular, Dr. Baker
wrote that Plaintiff "is taking her Plavix and Zocor sporadically, if at all. She states that it is too
expensive. I told the patient in no uncertain terms that I have no magical power to protect her.
Some of the ways that she can decrease her chance of an event in the near future and maybe
prolong event free survival is to take the medications" (Tr. 930A). Dr. Baker also noted that
Plaintiff "is not taking her Plavix, certainly again, this is a very risky thing for her to do.... She
understands that could kill her...." (Tr. 930A).

On February 27, 2007, Dr. Audrey Fann filled out a Physical Capacities Evaluation form,
which indicated that Plaintiff could sit for six or more hours, stand/walk for one hour, could
occasionally lift up to 10 pounds and could never climb, balance, stoop, kneel, crouch, crawl or
reach above shoulder level (Tr. 926-927). Dr. Fann also checked "no" when asked on the form if
Plaintiff suffered from fatigue for which there was a reasonable medical basis (Tr. 927).

On June 22, 2007, Dr. Fann wrote a "to whom it may concern" letter, stating:

This letter is concerning Beverly Lemle (date of birth 11/23/1951). The patient has been under my medical care since January 2006. She has recurrent atrial fibrillation despite undergoing modified maze procedure. She is to restart coumadin for her recurrent atrial fibrillation. She also has undergone a bypass surgery followed by multiple stents and angioplasties, but continues to have unstable angina as well as chest wall pain related to her multiple cardiac surgeries. She has an AICD as well as a pacemaker for heart block and sudden cardiac arrest. She also has hypertension, hyperlipidemia and hypothyroidism. She is currently suffering from fatigue, chest pain, angina, and recurrent atrial fibrillation. She is undergoing medication changes to optimize her medical status, but has drowsiness on her current medications, and also suffers from left arm numbness and swelling due to her previous surgery site. She is unable to work at this time due to her symptoms of fatigue, drowsiness, chest pain. and angina. Please call with any questions.

(Tr. 960)

On September 13, 2007, Dr. Todd Gottschalk also filled out a Physical Capacities Evaluation form (Tr. 1017-1019). On this form, Dr. Gottschalk indicated that Plaintiff could sit for six hours per day and stand/walk for less than one hour per day. Dr. Gottschalk further stated that Plaintiff can lift no more than five pounds and that she should not drive a car (Tr. 1019). Dr. Gottschalk also found that Plaintiff suffered from fatigue (Tr. 1019).

### 2.     Medical Expert Testimony

Dr. John Morse, a board-certified cardiologist, testified that Plaintiff's heart condition qualified as a "Listed Impairment" from October 15, 2002 through January 31, 2006 (Tr. 28, 1053-1055). Dr. Morse testified that Plaintiff was disabled from October 2002 through the end of January 2006 because she underwent three heart surgeries, an angioplasty, and an implantation of a defibrillator and a subsequent pace maker (Tr. 1053). However, Dr. Morse testified that, by February 1, 2006, Plaintiff's cardiac health had returned to normal (Tr. 1053). This was evidenced by a cardiology consultation that showed no evidence of residual coronary blockages, angina, congestive heart failure, and an ejection fraction of around 60 percent (Tr. 936-940,

1054).[2]  Dr. Morse opined that Plaintiff could do light work, including the ability to lift 10 pounds frequently and 20 pounds occasionally, as well as sit and stand each about six hours in an eight hour day, so long as she was limited to only occasional postural positions (Tr. 1054-1055).

A second administrative hearing was held in October 2007, because the record had been held open for additional evidence (Tr. 1032, 1056).  Dr. Morse was given an opportunity to review the additional evidence, which included the above discussed assessments by Drs. Baker, Fann, and Gottschalk.  Dr. Morse observed that the most recent cardiac assessment showed that Plaintiff's heart functioning was normal, as evidenced both by diagnostic testing and physical examination, and she was making a good recovery (Tr. 1068-1069).  Plaintiff's doctors were adjusting her beta blockers to minimize side effects (Tr. 1069).  Dr. Morse also stated that Plaintiff's Coumadin would need to be adjusted periodically to reduce cardiac symptoms, but that it would not have a limiting effect on Plaintiff's functional capacity (Tr. 1069).  Dr. Morse reaffirmed that Plaintiff had no major setbacks in her recovery, and that she could still do light work after January 31, 2006 (Tr. 1070).  Dr. Morse testified that Plaintiff's cardiac problems had almost entirely resolved, and while she always would remain "at risk for certain future events," the defibillator and pacemaker were implanted to deal with them (Tr. 1069-1070, 1073-1074). Specifically, Dr. Morse testified that:

> [Plaintiff's] heart muscle has returned to normal, her coronary circulation for all intents [sic] and purposes is normal, and that her lung fields, her physical exam, and all of her imaging studies indicate that she is back to class two from a cardiac standpoint. And that's being very liberal, she might even be a class one.
>
> (Tr. 1074)

---

[2]  Ejection fraction is a measurement of the percentage of blood leaving the heart each time it contracts. Because the left ventricle is the heart's main pumping chamber, ejection fraction is usually measured only in the left ventricle (LV). A normal LV ejection fraction is 55 to 70 percent.  *See* http://www.mayoclinic.com/health/ejection-fraction/AN00360 (last visited January 17, 2012)

Dr. Morse explained that a class one cardiac patient "can do extreme activities without symptoms," whereas a class two individual could "easily . . . do light activities without induction of symptoms" (Tr. 1074).

### 3. Vocational Expert

Jack Dymond, a vocational expert, also testified at the June 2007 hearing (Tr. 1031). Mr. Dymond testified that, based on Plaintiff's description of her past job as intake supervisor, it was performed between a sedentary and light exertional level (Tr. 1035-1036). However, Mr. Dymond stated that the Dictionary of Occupational Titles (DOT) defined the Intake Supervisor position as a "sedentary" job in the national economy (Tr. 1036). Mr. Dymond testified that Plaintiff could work as an intake supervisor, as the job is performed in the national economy, if limited to either sedentary or light work with occasional postural limitations (Tr. 1058-1061).

### C. *Plaintiff's Claims of Error*

Plaintiff raises four arguments on appeal, namely: (1) that the record does not contain a reference to the credentials of the medical and vocation experts who testified at the hearing, thus those experts were unqualified to provide expert testimony; (2) that the ALJ improperly discounted Plaintiff's credibility; (3) that the ALJ improperly relied on flawed testimony from the vocational expert; and (4) that the ALJ improperly rejected the opinions of Plaintiff's treating physicians.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination

for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree

is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court

must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

**C.     Analysis and Conclusions**

As noted earlier, Plaintiff raises four arguments on appeal.  Each of Plaintiff's arguments is considered below:

> **1.     Plaintiff Has Waived The Ability To Challenge The Experts'
>         Credentials By Not Raising The Issue During The Hearing**

Plaintiff's first argument is that the Court should disregard the testimony of the medical expert and of the vocational expert, because those experts' credentials do not appear in the record.  This argument is not well-taken.  The ALJ held two hearings in the matter – one on June 11, 2007 and one on October 2, 2007.  Plaintiff was represented by an attorney – Lisa Talley – at both hearings.  Dr. Morse testified as a medical expert at both hearings and Mr. Dymond testified as a vocational expert at both hearings.  The ALJ specifically gave Plaintiff's attorney the opportunity to question Dr. Morse, and Plaintiff's counsel declined to ask Dr. Morse any questions:

> ALJ: Okay.  Okay.  Questions of the doctor, Ms. Talley?
>
> ATTY: No, that's okay.
>
> (Tr. 1055).

If Plaintiff wished to challenge Dr. Morse's credentials, Plaintiff's counsel should have cross-examined Dr. Morse during the first hearing.  Likewise, the vocational expert – Mr. Dymond – testified at both hearings and, although Plaintiff's attorney questioned the vocational expert regarding his opinions, she did not challenge or explore the vocational expert's credentials (Tr. 1061-1062).  Since Plaintiff's counsel failed to explore Dr. Morse's and Mr. Dymond's credentials during the hearings, I find that Plaintiff has waived the opportunity to challenge those experts' credentials for the first time on appeal in this Court.  *See City of Riverview v. Surface Transp. Bd.*, 398 F.3d 434, 443-44 (6th Cir. 2005) ("a court should not consider an argument that

has not been raised in the agency proceeding that preceded the appeal"); *see also Butler v. Comm'r of Soc. Sec.,* 114 F.3d 1186 (table), 1997 WL 259374 *4 (6th Cir. 1997) ("Although due process requires that a claimant be given the right to cross-examine individuals who testify, that right is waived if the attorney is silent when the opportunity to cross-examine arises").

Furthermore, after the ALJ asked Plaintiff's attorney, Ms. Talley, if she had any questions for Dr. Morse, the following exchange took place:

> ALJ: All right, Ms. Talley, we have nothing further for the Doctor, I'm going to let you go and then I'll call you back.
>
> ME [Dr. Morse]: Okay, Judge, thank you.
>
> ALJ: Thank you. I just didn't – he's a practicing physician and he's a cardiologist –
>
> CLMT: Right.
>
> ALJ: – so I wanted to release him to patients that need him.
>
> (Tr. 1055).

This exchange makes clear that the ALJ was treating Dr. Morse as a medical expert and, more specifically, as an expert cardiologist. Thus, contrary to Plaintiff's first argument, the record does contain a reference to Dr. Morse's medical speciality. In sum, if Plaintiff wanted to challenge the credentials of the expert witnesses, she should have done so during the administrative hearing.

### 2.     The ALJ Properly Weighed Plaintiff's Credibility

Plaintiff's second argument is that the ALJ improperly discounted Plaintiff's "testimony that she still had a blockage even though there is record evidence to support her testimony" (Dkt. 18; Pl.'s Br. at 11). At the outset, the ALJ was not required to accept Plaintiff's lay testimony concerning her medical condition. Rather, the ALJ appropriately considered the medical

evidence in the record to determine the severity of Plaintiff's cardiac condition. Plaintiff certainly was able to testify as to how her condition limited her ability to function, but the ALJ is not required to give any special deference to Plaintiff's lay testimony concerning the specific level of heart "blockage" from which she suffered.

Second, this Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 Fed. App'x. 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. App'x. 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x. 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

The ALJ provided a detailed and lengthy discussion of his reasons for finding that Plaintiff's subjective complaints were not fully credible. Indeed, the ALJ gave no fewer than sixteen reasons for discounting Plaintiff's claim that her disability continued after February 1, 2006. Specifically, the ALJ stated:

> First, [Plaintiff] is not taking the type of pain medication associated with severe disabling pain. Second, the record shows that [Plaintiff] has not been compliant

-14-

with her medication regime. Despite complaining of her headaches, she lost her prescription and did not call for it to be rewritten.  She waited until her next doctor's appointment to get it. Also, on August 7, 2007. Dr. Baker reported that [Plaintiff] did not start her Plavix and/or Coumadin "even after she was adamant about starting it on the last visit." Interestingly, she denied any chest pain, pressure or tightness. She also denied any ICD shock or episodes of atrial fibrillation. Third, as early as February 1, 2006, it was noted that despite strong warnings form her physician, [Plaintiff] was not taking her Plavix. Fourth, [Plaintiff's] ejection fraction was almost 60%.  Fifth, Dr. Baker, a treating cardiologist, reported on [Plaintiff's] heart condition but refused to give an opinion as to [Plaintiff's] limitations.  Instead, he opined that there were other more qualified individuals to do this.  Sixth, the record shows that [Plaintiff's] cardiac status is stable. She has no congestive heart failure or ischemia.  Seventh, [Plaintiff's] depression is not being treated by a mental health specialist. She is being treated wither (sic) by her cardiologist or her internist.  Eighth, [Plaintiff] is described as alert and orient (sic) with normal motor and sensory testing despite her complaints of severe headaches. Her CT scan of her brain is normal and there is no organic evidence to explain her headaches. Ninth, [Plaintiff] is not undergoing any orthopedic treatment or physical therapy. Tenth, Dr. Baker, [Plaintiff's] current treating cardiologist, reported recently that [Plaintiff's] cardiac status was stable. Eleventh, on November 27, 2006, [Plaintiff] told her cardiologist that she had no complaints.  Twelfth, Dr. Morse testified that [Plaintiff's] symptoms are from her medications and are not disabling. Thirteenth, Dr. Morse testified that [Plaintiff] can perform limited light work activity.  Fourteenth, Dr. Morse stated that [Plaintiff] has an implanted device that detects arrhythmias and that she has not had any sustained atrial fibrillations since February 2006.  He also stated that there is no objective evidence of residual blockage.  Fifteenth, Dr. Morse testified that there is no objective evidence of orthopedic problems and that [Plaintiff] has no limitations in the use of her upper extremities due to her prior surgery.  Sixteenth, [Plaintiff] does not allege that she cannot perform her personal needs without assistance. Consequently, [Plaintiff's] allegations of disabling limitations are not credible to the extent alleged as of February 1, 2006.

(Tr. 32) (internal citations omitted)

The above quoted reasons are supported by substantial evidence in the record, and Plaintiff

makes no attempt in her motion for summary judgment to attack the above narrative.  Most

telling is the ALJ's finding that Plaintiff failed to follow her prescription medication regime.

Social security regulations make clear that the claimant bears the burden of demonstrating good

reasons for her failure to follow prescribed treatment: "If you do not follow the prescribed

-15-

treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b),

416.930(b).  The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment

is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully

credible.  *See Sias v. Secretary of Health & Human Serv's*., 861 F.2d 475, 480 (6th Cir. 1988).

Dr. Baker, the treating cardiologist, on whose opinion Plaintiff's motion for summary judgment

heavily relies, issued stern warnings to Plaintiff about her failure to follow her medication regime

(Tr. 922, 930A).  Simply put, this Magistrate Judge finds that the ALJ's credibility determination

is supported by substantial evidence, and there is no reason to disturb it on appeal.  *See Blacha v.*

*Sec'y of Health & Human Serv's*., 927 F.2d 228, 231 (6th Cir. 1990); *see also Infantado v.*

*Astrue*, 263 Fed. App'x 469, 475-76 (6th Cir. 2008).

### 3.      The ALJ Was Entitled To Rely On The VE's Testimony

Plaintiff's third argument is an attack on the testimony of the vocational expert; Plaintiff

appears to be arguing that the ALJ erred by concluding that she could perform her past relevant

work as an intake supervisor, without identifying other positions in the regional economy she

could do considering her limitations.  This argument misses the mark.  Because the ALJ found at

step four that Plaintiff could perform her past relevant work as an intake supervisor, the analysis

stopped at step four and the ALJ had no reason to proceed to step five of the analysis.  *See*

*Walters*, *supra*, 127 F.3d at 529 ("We do not need to reach Step Five nor any of the arguments

Walters has advanced concerning Step Five since the ALJ's conclusion at Step Four is supported

by substantial evidence, rendering any such discussion inconsequential.").

Plaintiff also objects that the ALJ's reliance on the vocational expert's testimony was

misplaced on the grounds that she could not perform her prior relevant work, as she had in the

past.  The vocational expert testified that Plaintiff performed her past work as intake supervisor

at the "light" exertional level, but that such a job was normally performed at the "sedentary" level in the national economy (Tr. 1034-1036, 1060).  Contrary to Plaintiff's argument, it is well established in the Sixth Circuit that the Commissioner can reasonably rely on the requirements of a job as it is performed in the national economy, not only the way in which Plaintiff actually preformed it.  *See Studaway v. Sec'y of Health & Human Serv's*, 815 F.2d 1074, 1076 (6th Cir. 1987) (in determining whether a claimant can perform his past relevant work, the Secretary may rely on the requirements of the job as the claimant performed it, or on the requirements of the job as it is generally performed in the national economy).

Plaintiff also argues that the ALJ's hypothetical questions to the vocational expert were improper because they did not properly account for some of the limitations included in the opinions by Drs. Baker, Fann, and Gottschalk (Tr. 244).  As discussed in greater detail below, however, the ALJ properly discounted these opinions to the extent they were based only on subjective complaints, inconsistent with the record as a whole, and at odds with the medical expert's testimony (Tr. 32-33).  The ALJ's hypothetical question to the vocational expert need only include those limitations credibly supported by the evidence.  *See Stanley v. Sec'y of Health & Human Serv's*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").  As discussed below, the ALJ appropriately discounted the opinions of Plaintiff's treating physicians.

### 4.      The ALJ Appropriately Discounted The Opinions Of Plaintiff's Treating Physicians

Plaintiff's final argument is that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians, instead giving greater weight to the medical expert and to the state agency physicians.

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96–2p.  And even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 C.F.R. § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)).  In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Moreover, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

I find that the ALJ in this case complied with the procedural aspects of the treating-physician rule and that his ultimate decision to reject Drs. Baker, Fann and Gottschalk opinions is within the "zone of choice" accorded an ALJ on substantial evidence review. First, it is well-settled that the ultimate issue of disability is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1); *Kidd v. Comm'r of Soc. Soc.*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. App'x 472, 475–76 (6th Cir. 2008). The ALJ therefore was not bound by the opinion of Dr. Fann (Tr. 960) that Plaintiff was unable to perform any type of job.

Second, the ALJ gave the following lengthy narrative concerning the weight he assigned to each physicians' opinion:

> In terms of the opinion evidence, I have given the medical expert's [Dr. Morse] testimony significant weight as he has had the opportunity to review the entire record and to observe [Plaintiff] at the hearing. Moreover, he is an expert in cardiology.

> (Tr. 32)

> I have also given the state agency consultative physician's opinion significant weight as it is consistent with the record as a whole. Finally, I have considered the opinion of Dr. Fan [sic, actually spelled Dr. Fann], and even accepting her opinion on February 27, 2007, of a more limited residual functional capacity, the vocational expert opined that [Plaintiff] can perform her past relevant work.

> I have given the opinion of Dr. Gottschalk, dated September 2007, less weight than it might ordinarily deserve as it is not consistent with the medical record as a whole. Further, Dr. Morse noted that at the time this opinion was rendered, [Plaintiff] was stable, cardiac wise, and her headaches and side effects of medication would not preclude her from working. I have also considered the July 2007 opinion of Dr. Gottschalk and have rejected it as an opinion of disability. I find that Dr. Morse's testimony is more persuasive and he based his opinion that [Plaintiff] could perform light work activity on the total record and the objective evidence showing that [Plaintiff's] cardiac impairment was stable. I find that Dr. Gottschalk based his opinion on [Plaintiff's] subjective complaints. I have also considered his opinion of September 6, 2007 which I have interpreted to mean that [Plaintiff] could perform sedentary work activity, in the absence of the consideration of his mention of [Plaintiff's] fatigue. Dr. Morse credibly testified

-19-

that [Plaintiff's] fatigue is not due to her cardiac condition. It may be related to her medication which can be adjusted. Moreover, he stated that her fatigue was not to the level that she could not perform light work activity. I find Dr. Morse's testimony to be more persuasive in this instance.

I note also Dr. Baker's statement of January 17, 2007 that [Plaintiff] has a Class III cardiac functional capacity. He defined it as marked limitation of physical activity and that [Plaintiff] can climb one flight of stairs, walk one block at a time, and should not do more than the usual activities of daily living. I have interpreted this to mean that [Plaintiff] can perform sedentary work activity. The vocational expert testified that with a residual functional capacity for sedentary work, [Plaintiff] can perform her past relevant work.

I have also considered the June 22, 2007 letter from Dr. Fan, a treating physician, who stated that [Plaintiff] is disabled. I have rejected this opinion as an opinion of disability under the Social Security Act. First, the determination of disability is a determination reserved to the Commissioner. Additionally, there are multiple medical records stating that [Plaintiff] is stable, and has appropriate medications. They also note that [Plaintiff's] symptoms could be related to other causes, not cardiac in nature. Once, it was even suggested that her chest pain was related to something she had eaten. I find that there is no objective support for Dr. Fan's opinion of disability and have rejected it. I also note that Dr. Fan did not state what specific limitations [Plaintiff] has and she did not state any time period that she was considering. Thus, there is no opinion of 12 continuous months of disability.

I have also considered the February 27, 2007 residual functional capacity assessment submitted by Dr. Fan and find that this would allow [Plaintiff] to perform a level of sedentary work activity. [Mr. Dymond found that there was work [Plaintiff] could perform her past relevant work when considering Dr. Fan's assessment and [Plaintiff's] age, education and past relevant work.]

(Tr. 33)

I also note that I held a supplemental hearing, allowing for Dr. Morse to review the new records and offer an opinion regarding [Plaintiff's] functional abilities as of February 1, 2006 and continuing. Dr. Morse testified that the new evidence did not change his opinion that [Plaintiff] could perform limited light work as of February 1, 2006. He again reiterated that the opinion of marked limitations could not be from a cardiac standpoint as [Plaintiff's] heart function was normal. I am persuaded by Dr. Morse's expert testimony.

(Tr. 34) (internal citations omitted)

The above narrative shows that the ALJ carefully considered all the medical evidence of record, and gave very specific and detailed reasons for the amount of weight he gave to each physicians' opinion.  As such, the ALJ complied with the treating physician rule, and there is no basis to overturn his decision.  This conclusion is based on the premise that this Court does not have authority to reweigh the factual evidence.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989) (internal citation omitted).  Rather, the Court must affirm an ALJ's decision if the finding and inferences reasonably drawn from the record are supported by substantial evidence, even if the record could support a different conclusion.  *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Here, substantial evidence supports the ALJ's reasoning concerning the amount of weight to be given to the opinions of Plaintiff's treating physicians.  As such, the decision of the Commissioner should be affirmed.

## III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

      Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.

                            s/Mark A. Randon_____
                            Mark A. Randon
                            United States Magistrate Judge

Dated:  January 27, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 27, 2012, by electronic and/or ordinary mail.*

                            *s/Melody R. Miles_____*
                            *Case Manager to Magistrate Judge Mark A. Randon*
                            *(313) 234-5542*